UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
In re:                                                                    Chapter 11

Cherry Operating LLC,                                          Case No.

                                   Debtor.
-------------------------------------------------------------x

### DEBTOR'S DECLARATION
### PURSUANT TO LOCAL BANKRUPTCY RULE 1007-2

       Aaron Ambalu declares the following under penalties of perjury pursuant to 28 U.S.C. § 1746:

       1.     I have been recently engaged by Cherry Operating LLC (the "Debtor") to act as its restructuring officer and non-member manager for the purposes of assisting the Debtor in the prosecution of its Chapter 11 case.

       2.     In my capacity as Chief Restructuring Officer and non-member manager, I respectfully submit this Declaration in accordance with Local Bankruptcy Rule 1007-2 in support of the Debtor's filing of a voluntary petition under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code").

### Events Necessitating the Chapter 11 Filing

       3.     The Debtor was formed in 2013 in conjunction with the sale of certain real property located at 250 South Street, New York, NY a/k/a 227 Cherry Street (the "Property"). This Property was previously owned by the Debtor's affiliate, Cherry Street LLC, and sold to CPS Fee Company LLC (the "Optionor"), an affiliate of Extell Development Company ("Extell"), for $100 million as part of a large residential redevelopment project. Following the sale, the Property was subsequently redeveloped by Extell and its affiliates as a residential condominium apartment building with certain commercial units.

4. In conjunction with the sale, the Debtor was granted a purchase option by the condominium sponsor, the Optionor, to acquire the parking garage facility (the "Parking Unit") to be built at the site pursuant to a certain Option Agreement dated March 15, 2013 (the "Option Agreement").

5. The Option Agreement fixed the option price based upon a formula set forth in Section 2(d) thereof. The Debtor's options rights were triggered upon issuance of a certain defined "Parking Election Notice" by the Optionor after the occurrence of various express "Garage Option Conditions" and satisfaction of "Co-Occupancy Contract Requirements", all as defined in the Option Agreement.

6. The Debtor's Option Agreement was duly recorded by a written Memorandum of contract, duly filed with the New York City Registrar on March 21, 2013. Thereafter, construction ensued and the project was ultimately completed.

7. On or about June 14, 2019, the Debtor exercised its rights under the Option Agreement to acquire the Parking Unit constructed at the Property, containing approximately 105 parking spaces. The parties fixed an option price of $3,300,000, subject to the Optionor's compliance with various closing conditions referred to in the underlying agreement as the "Parking Unit Delivery Conditions".

8. Contemporaneously with the execution of the option, a contract deposit of $333,000 was remitted to Commonwealth Land Title Insurance Company pursuant to a formal escrow agreement.

9. By letter dated February 12, 2020, the Optionor gave written notice (the "Closing Notice") to the Debtor of a Parking Unit delivery date of April 13, 2020, time of the

essence. In other words, the Optionor set April 13, 2020 for a closing on the option, time of the essence.

10. After issuance of the Closing Notice, various disputes arose between the parties concerning, *inter alia*, whether (i) the Closing Notice was valid; and (ii) whether the Parking Unit Delivery Conditions were, in fact, fully and properly met.

11. The Debtor, in a series of communications, rejected the Closing Notice, and alleged multiple deficiencies which need to be remedied before a closing can properly proceed.

12. Notwithstanding that disputes remain unresolved, the Optionor persists on demanding that the time of the essence closing occur on April 13, 2020.

13. The Optionor's demands for closing were not only issued in the midst of the Covid-19 crisis, but seek to unilaterally invoke a potential forfeiture of rights, even though the Optionor has failed to satisfy a number of covenants and conditions under the Option Agreement.

14. Among other things, the Optionor has failed to comply with or address the following:

    (a) <u>No Action Letter</u>. The Optionor cannot properly convey title to the Parking Unit because the condominium offering plan did not offer the Parking Unit for sale, and the Optionor has not obtained a proper "No Action" or "No Filing" letter permitting a sale of the Parking Unit to the Debtor as a non-affiliated third party.

    (b) <u>Failure to Issue Notice Properly</u>. As of the date of the Closing Notice, the Optionor did not have title to the Parking Unit, which is now owned by an affiliate, CPS Garage Company LLC. As such, Optionor was not and is not ready, willing or able to convey title to the Parking Unit until it becomes the record owner again.

    (c) <u>Failure to establish that Co-Occupancy Requirement has been met</u>. While Optionor alleges that is has concluded sales of more than twenty (20%)

3

        percent of the residential units to non-affiliated third parties (which satisfies the co-occupancy requirement), the Optionor has not presented any actual proof of such closings to corroborate its statements, and thus this requirement may still be open.

15. Additionally, the Optionor has also failed to finalize all necessary "Parking Garage Legal Documentation/Information" as required by the good-faith provisions of Section 2.01(h) of the Option Agreement. As a result, a proper and reasonable expense allocation schedule has not been included as an amendment to the Condominium By-Laws, creating disputes as to the proper and fair allocation of the common charges for the Parking Unit. Without the amendment, the common charges, as currently budgeted, are more than twice what is reasonable based upon a rational allocation.

16. In this regard, common charges for the Parking Unit should not include either of the following: (i) salaries and benefits for the residential unit general manager, assistant manager or other building employees; or (ii) building maintenance, supplies and service contracts. Moreover, the allocation for building insurance is currently inequitable. Before a closing can proceed, a fair and rational allocation of common charges must be established.

17. Unfortunately, the Debtor's efforts to adjourn the closing while the issues and disputes can be further negotiated have fallen on deaf ears, leaving the Debtor with no alternative except to seek Chapter 11 relief to avoid even the possibility of a forfeiture.

18. The Debtor intends to use the time afforded by the automatic stay, coupled with the tolling provisions of 11 U.S.C. §108(b), to attempt to address the above deficiencies, either by negotiation or litigation, with due recognition that the Covid-19 crisis has effectively brought the New York real estate industry to a standstill.

## Local Rule 1007-2 Disclosures

19. Pursuant to Local Rule 1007-2(a)(3), no committees were formed prior to the filing of the Debtor's Petition.

20. Pursuant to Local Rule 1007-4(a)(4), a list of the Debtor's twenty largest creditors is included as part of the Debtor's bankruptcy schedules, being filed herewith.

21. Pursuant to Local Rule 1007-4(a)(5), the Debtor has no secured creditors.

22. Pursuant to Local Rule 1007-4(a)(6), the Debtor's assets and liabilities are set forth in schedules being filed herewith.

23. Pursuant to Local Rule 1007-4(a)(7), the membership interests in the Debtor are not publically held. The respective membership interests in the Debtor are held in a trust, as listed on the schedule of equity holders.

24. Pursuant to Local Rule 1007-4(a)(8), none of the Debtor's assets are in the possession or custody of any custodian, public officer, mortgagee, pledge, assignee of rents or secured creditor.

25. Pursuant to Local Rule 1007-4(a)(9), the Debtor is a contract optionee, and does not yet own the Parking Unit.

26. Pursuant to Local Rule 1007-4(a)(10), the Debtor's books and records are located at 250 W 26th Street, Second Floor, New York, NY 10001-6737 .

27. Pursuant to Local Rule 1007-4(a)(11), the Debtor is not a party to any pending lawsuits.

28. Pursuant to Local Rule 1007-4(a)(12), I am the non-member Manager and Chief Restructuring Officer of the Debtor.

29. Pursuant to Local Rule 1007-4(b)(1), the Debtor has no current employees.

30. Pursuant to Local Rule 1007-4(b)(2 and 3), the Debtor does not anticipate making any disbursements in the next thirty (30) days, unless an immediate resolution is obtained regarding the deficiencies cited above.

Dated: New York, New York
      April 12, 2020

                        /s/Aaron Ambalu
                        Aaron Ambalu, Non-Member Manager